UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

John M. Massey and Kimberly
K. Massey,

                Plaintiffs,

v.

Mortgage Electronic Registration
Systems, Inc., Countrywide Home Loans,
Inc., Countrywide Home Loans Servicing LP,
and HSBC Bank USA, National Association,

                Defendants.

Civ. No. 09-1144 (RHK/JSM)
**MEMORANDUM OPINION
AND ORDER**

---

John M. Massey and Kimberly K. Massey, Plaintiffs *pro se*, Minneapolis, Minnesota.

Alan H. Maclin, Brent R. Lindahl, Mark G. Schroeder, Briggs & Morgan, PA, Minneapolis, Minnesota, Jared M. Goerlitz, Steven H. Bruns, Peterson Fram & Bergman, PA, St. Paul, Minnesota, for Defendants.

---

**INTRODUCTION**

Plaintiffs John and Kimberly Massey (the "Masseys") allege that Defendants Countrywide Home Loans, Inc. and Countrywide Home Loans Servicing LP (collectively, "Countrywide"), and others,[1] breached an oral promise to postpone a foreclosure sale and enter into a loan modification agreement, waived the right to

---

[1] The additional Defendants are Mortgage Electronic Registration Systems, Inc. and HSBC Bank

foreclose, and violated Minn. Stat. § 580.09 through the acceptance of a $500 transfer without reflecting the funds in the foreclosure sale certificate. This matter comes before the Court on Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

**BACKGROUND**

The Masseys previously owned a home located at 724 East Minnehaha Parkway in Minneapolis, Minnesota. (J. Massey Dep. Tr. at 7.) On April 22, 2005, they entered into a construction mortgage loan with Countrywide in order to build a new home on the property. (Schroeder Aff. Ex. C; J. Massey Dep. Tr. at 10, 44-45.) On September 2, 2005, the Masseys and Countrywide executed a modification agreement, converting the construction loan into a 30-year, fixed-rate loan (the "Mortgage Loan"). (Schroeder Aff. Ex. D; J. Massey Dep. Tr. at 45-46.)

In the fall of 2007, the Masseys began to experience financial difficulties, resulting in their default on the Mortgage Loan. (Schroeder Aff. Ex. E; J. Massey Dep. Tr. at 50-53.) In June 2008, Countrywide advised them that it would foreclose on the Mortgage Loan, and on July 2, 2008, foreclosure proceedings were commenced. (Schroeder Aff. Exs. F-H; J. Massey Dep. Tr. at 53-61.) The foreclosure sale was set for August 29, 2008, and then rescheduled for October 1, 2008. (Schroeder Aff. Ex. H; J. Massey Dep. Tr. at 64; K. Massey Dep. Tr. at 28-29.)

On August 21, 2008, Countrywide approved the Masseys for a loan modification

---

USA, National Association. (Compl. ¶¶ 2, 5.)

subject to the satisfaction of several conditions (the "Loan Modification Agreement"). (Schroeder Aff. Ex. I.) The Loan Modification Agreement provided that the principal balance and payments under the Mortgage Loan would be adjusted, with new payments commencing on October 1, 2008. (Id.) However, before the Loan Modification Agreement would become effective, the Masseys were required to pay Countrywide $12,000 in certified funds by September 1, 2008. (Id.) The Masseys understood that Countrywide did not waive its right to proceed with foreclosure if all the conditions of the Loan Modification Agreement were not timely met. (Id.; J. Massey Dep. Tr. at 70-71; K. Massey Dep. Tr. at 26-27.)

The Masseys failed to make the $12,000 payment on time. (J. Massey Dep. Tr. at 73; K. Massey Dep. Tr. at 32.) Accordingly, Countrywide canceled the Loan Modification Agreement and the October 1, 2008, foreclosure sale date remained in effect. (K. Massey Dep. Tr. at 33.) After the Loan Modification Agreement was canceled, the Masseys and Countrywide continued to discuss a loan modification, but no agreement was placed in writing. (J. Massey Dep. Tr. at 73, 78-81; K. Massey Dep. Tr. at 33-37.) Specifically, the parties discussed whether the foreclosure could be postponed and a loan modification agreement executed if by September 29, 2008, the Masseys wire transferred $500 to Countrywide and sent a commitment letter demonstrating that $12,000 was available to them. (Id.) On September 29, 2008, they wire transferred $500 to Countrywide. (Schroeder Aff. Ex. J.) However, Countrywide contends that while it did receive a letter from the Masseys, it did not indicate that $12,000 was available to

them. The letter referenced a potential real estate deal, but it did not indicate the dollar amount the Masseys would receive as a result of the transaction. (Schroeder Aff. Ex. K.) Accordingly, Countrywide did not offer an additional loan modification agreement to the Masseys and returned the $500 wire transfer on October 17, 2008. (Schroeder Aff. Ex. J. Massey Dep. Tr. at 82; K. Massey Dep. Tr. at 17.) The foreclosure sale took place, as scheduled, on October 1, 2008. (J. Massey Dep. Tr. at 64.)

In April 2009, the Masseys commenced this action in Hennepin County District Court, which was subsequently removed here. The Masseys assert claims for declaratory judgment, breach of contract, and violation of Minn. Stat. § 580.09. All Defendants now move for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). However, the nonmoving party may not rest on mere allegations or denials, but

must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

**I.     Declaratory judgment and breach of contract**

The Masseys seek a declaration that Countrywide's acceptance of the $500 transfer constituted a waiver of its right to foreclose on the 724 East Minnehaha Parkway property.[2] In addition, the Masseys contend that a contract was created when Countrywide agreed to postpone foreclosure and enter into a loan modification agreement in exchange for the $500 transfer and commitment letter. Countrywide asserts that these claims must be dismissed, as any oral agreement between Countrywide and the Masseys is unenforceable pursuant to Minn. Stat. § 513.33.[3] The Court agrees, and therefore, these claims will be dismissed.

---

[2] The Masseys assert for the first time in their Memorandum in Opposition that Countrywide also waived its right to foreclose by charging illegal fees. (Mem. in Opp'n ¶¶ 4-7.) However, the Court will not consider allegations not contained in their Complaint. Brown v. Herald Co., 698 F.2d 949, 951 (8th Cir. 1983). Moreover, there is nothing in the record indicating that Countrywide charged the Masseys any illegal fee.

[3] The Masseys have not addressed the merits of Countrywide's assertion that their declaratory judgment and contract claims should be dismissed pursuant to Minn. Stat. § 513.33. Instead, the Masseys refer the Court to several unrelated cases pending in other courts involving Countrywide, and to hearsay statements from several third parties dissatisfied with Countrywide's services. (Mem. in Opp'n ¶¶ 4-14, Ex. D.) These cases and statements have no bearing upon, or relevance to, the matter pending before the Court.

5

Minnesota Statute § 513.33 bars the enforcement of "credit agreements" that are not placed in writing. This statute provides in relevant part, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2.

The Masseys contend that Countrywide orally promised to modify the Mortgage Loan and postpone foreclosure in exchange for a $500 transfer and commitment letter. Such a promise is required to be in writing if it constitutes a "credit agreement." Section 513.33 defines a "credit agreement" as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subd. 1. Moreover, Minn. Stat. § 513.33 expressly applies to agreements to forebear "from exercising remedies under prior credit agreements," such as the right to foreclose on a defaulted mortgage. Minn. Stat. § 513.33, subd. 3. Accordingly, the promise alleged by the Masseys is required to be in writing to create a cause of action. See Hinden v. Am. Bank of the N., No. A09-404, 2009 WL 4573909, at *2 (Minn. Ct. App. Dec. 8, 2009) (holding that under Minn. Stat. § 513.33, a promise to forebear on the collection of loan debt cannot create a cause of action unless placed in writing). Therefore, the Masseys' declaratory judgment and

contract claims, which are based upon an alleged oral credit agreement, will be dismissed.[4]

## II.     Minnesota Statute § 580.09

The Masseys' final claim is for violation of Minn. Stat. § 580.09.  This statute provides that prior to a foreclosure sale:

> the holder of the mortgage shall file with the sheriff a verified itemized statement in writing showing the entire amount remaining unpaid on the mortgage . . . The certificate of sale shall set forth correctly, in addition to the amount of sale, the remaining amount still unpaid on and secured by the mortgage, subject to which the sale is made.

The Masseys contend that Countrywide accepted their $500 transfer but failed to modify the sale certificate to reflect these funds.  As a result, the Masseys assert that the foreclosure sale was improper and should be set aside.  However, the Masseys do not dispute that the $500 transfer was returned in full, although after the foreclosure sale had taken place.[5]  Moreover, they acknowledge that the $500 transfer was not intended as a payment on the Mortgage Loan, but rather good faith capital demonstrating their intent to follow through with the $12,000 payment required to modify the Mortgage Loan.  (J.

---

[4] While not asserted by the Masseys, the alleged oral promise made by Countrywide could be construed as a modification of the original Loan Modification Agreement.  The Court has found no authority as to whether agreements subject to Minn. Stat. § 513.33 can be orally modified. However, contracts subject to the statute of frauds cannot be orally modified under Minnesota law.  Rooney v. Dayton-Hudson Corp., 246 N.W.2d 170, 175 (Minn. 1976).  Accordingly, the Court finds that even if the alleged oral promise was a modification of the Loan Modification Agreement, such a modification would have had to be in writing to be enforceable.

[5] The Masseys attach an e-mail sent from their former counsel to counsel for Countrywide as evidence that Countrywide accepted the $500 transfer.  (Mem. in Opp'n Ex. B.)  However, the assertions of the Masseys' former counsel are irrelevant and hearsay.

Massey Dep. Tr. at 85.) The Masseys' loan history does not indicate that the $500 transfer was ever applied to the Mortgage Loan. (Schroeder Aff. Ex. E.)

Neither party has cited any relevant authority addressing the issue of an inaccurate foreclosure sale certificate, nor has the Court located any. There is no case law or statute indicating that Minn. Stat. § 580.09 provides a private cause of action, or that the failure to accurately modify a foreclosure sale certificate is grounds to set aside an otherwise valid foreclosure. To the contrary, the Minnesota Supreme Court has held that when a published notice of foreclosure overstates the amount due on a mortgage, such an error is not a basis upon which to vitiate the sale, particularly when the plaintiff suffers no harm as a result of the mistake. Young v. Penn Mut. Ins. Co., 265 N.W. 278, 281 (Minn. 1936). Here, the Masseys can allege no harm resulting from the inaccurate foreclosure sale certificate. Moreover, the $500 transfer was not intended as a payment on the Mortgage Loan, but as good faith capital demonstrating the Masseys' intent to pay Countrywide $12,000 and enter into a loan modification agreement. The record does not support the contention that the $500 transfer should ever have been accounted for on the sale certificate, even if the funds had not been returned. For these reasons, the Masseys' claim under Minn. Stat. § 580.09 will be dismissed.

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 20) is

**GRANTED** and the Masseys' Complaint (Doc. No. 1, Ex. A) is **DISMISSED WITH PREJUDICE.**[6]

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: May 25, 2010                                    s/Richard H. Kyle
                                                                             RICHARD H. KYLE
                                                                             United States District Judge

---

[6] In addition to Countrywide, the Masseys have also sued Defendants HSBC Bank USA, National Association and Mortgage Electronic Registration Systems, Inc. The record is unclear as to these Defendants' involvement in this matter, but it is apparent that any claims against these Defendants are dependant upon the existence of a viable claim against Countrywide, as it is the conduct of Countrywide alone that constitutes the factual basis of the Complaint. Accordingly, all claims against all Defendants will be dismissed.